**HUNG LE, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 01-14-01019-CR**

Court of Appeals of Texas;
Houston (1st Dist.).

Published order issued August 30, 2016

Devon Anderson, Alan Curry, for The State of Texas.

Hung Le, pro se.

J. Sidney Crowley, for Hung Le.

Panel consists of Justices Jennings, Massengale, and Huddle.

1. *See* Tex. Penal Code § 22.02(a), (b)(2)(B).

2. *See Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

3. *In re Schulman*, 252 S.W.3d 403, 407 (Tex. Crim.App.2008).

4. *Banks v. State*, 341 S.W.3d 428, 430 (Tex. App.–Houston [1st Dist.] 2009, no pet.).

5. *Id.* (citing *Schulman*, 252 S.W.3d at 407); *see also Smith v. Robbins*, 528 U.S. 259, 281, 120 S.Ct. 746, 762, 145 L.Ed.2d 756 (2000)

## ORDER STRIKING *ANDERS* BRIEF

Michael Massengale, Justice

Appellant Hung Le pleaded guilty to the first-degree felony offense of aggravated assault on a public servant,[1] without an agreed recommendation from the State regarding punishment. The trial court found appellant guilty and assessed punishment at life imprisonment. Appellant timely filed a notice of appeal.

The appointed appellate counsel has filed a motion to withdraw from the appeal, along with an *Anders* brief in which he opines that no valid grounds for appeal exist and that the appeal is frivolous.[2] Appellant filed a pro se response. The State waived its opportunity to file a response brief.

We will strike the *Anders* brief and permit appointed counsel to file a new brief.

 A proper *Anders* brief "reflects the fact that the appointed attorney has adequately researched the case before requesting to withdraw from further representation."[3] An *Anders* brief is appropriate only when the attorney has "mastered the record and the evidence" and he determines that there "are no sustainable grounds for appeal."[4] "It sets out the attorney's due diligence, informs the client, and provides a roadmap for the appellate court's review of the record."[5] The *Anders* brief "also provides the client with cita-

("Counsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case."); *Kelly v. State*, 436 S.W.3d 313, 318 (Tex.Crim.App.2014) ("The purpose of the *Anders* brief is to satisfy the appellate court that the appointed counsel's motion to withdraw is, indeed, based upon a conscientious and thorough review of the law and facts . . . .").

tions to the record if he wishes to exercise his right to file a pro se brief."[6] In sum, counsel's "obligation to the appellate courts is to assure them, through the mechanism of an *Anders* brief, that, after thorough investigation and research, his request is well founded."[7]

█ The brief filed by appellant's appointed counsel fails to satisfy these standards.

The record reflects that the mental competency of appellant was a significant concern at the time of his plea and throughout the case. The plea hearing was recessed by the trial judge without any explanation on the record. 1 R.R. 12. Over two months later the hearing resumed, and the court accepted appellant's guilty plea. 2 R.R. 5-6. The reporter's record includes no explicit reference to appellant's mental competency at either phase of the plea hearing, although the plea paperwork signed by the trial judge includes a boilerplate finding that "[i]t appears that the defendant is mentally competent." C.R. 1603. After the trial court accepted appellant's guilty plea, defense counsel filed a motion for psychiatric examination to determine his competency, stating as the reason: "Mr. Le exhibited delusive behavior during attempted plea." C.R. 1617. The motion was granted. C.R. 1618. The resulting evaluation included an opinion that appellant was competent to stand trial. C.R. 1624. Three

months after that, a sentencing hearing was held. The trial court entered a judgment of conviction, sentencing appellant to life imprisonment. C.R. 1628.

There is an unusually long clerk's record in this criminal appeal, consisting of 1,651 pages. The record includes hundreds of pages of medical records. It also includes numerous references in legal filings to the mental competency of appellant. *See, e.g.,* C.R. 15 (8/22/12 order for psychiatric or medical review); C.R. 29 (12/11/12 order for psychiatric or medical review); C.R. 35 (1/11/13 psychiatric or medical status report); C.R. 61 (10/14/13 notice of intent to raise insanity defense); C.R. 181 (10/21/13 motion for psychiatric examination: competency); C.R. 182 (10/21/13 order granting motion for psychiatric examination: competency); C.R. 187-92 (12/19/13 evaluation summary: competency to stand trial); C.R. 787 (undated motion for psychiatric examination: sanity); C.R. 788 (2/20/14 order granting motion for psychiatric examination: sanity); C.R. 790 (3/19/14 letter from MHMRA informing judge that appellant elected not to participate in sanity examination); C.R. 792 (undated motion for psychiatric examination: sanity); C.R. 793 (3/26/14 order granting motion for psychiatric examination: sanity); C.R. 798 (4/24/14 evaluation summary: sanity); C.R. 972 (10/18/13 second notice of intent to raise insanity defense).

---

**6.** *Banks,* 341 S.W.3d at 430 (citing *Schulman,* 252 S.W.3d at 407-08). This aspect of the *Anders* brief is particularly important to criminal appellants in Texas because they are guaranteed the right to have assistance of counsel on direct appeal, but not for postconviction habeas corpus petitions. *See generally Trevino v. Thaler,* —— U.S. ——, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013) (discussing Texas procedures available to raise ineffective assistance of counsel claims); *Ex parte Garcia,* 486 S.W.3d 565, 572 (Tex.Crim. App.2016) (Alcala, J., dissenting) ("Although Texas has provided a vehicle—an application for a writ of habeas corpus under Article

11.07 of the Code of Criminal Procedure—for presenting complaints about the effectiveness of trial counsel, the problem is that indigent defendants have no right to counsel at that juncture.").

**7.** *Schulman,* 252 S.W.3d at 407; *see also McCoy v. Court of Appeals of Wis., Dist. 1,* 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988) (observing that an *Anders* brief must demonstrate the appointed lawyer has "fully performed" his duty to support his client's appeal to the best of his ability).

In contrast with the relative complexity of the record in this appeal, the *Anders* brief is 13 pages long. Of those 13 pages, there is a 1½-page statement of facts, and less than one page of analysis of potential appellate issues. Neither the statement of facts nor the analysis of potential appellate issues contains any indication that the mental competency of appellant to enter a guilty plea was an issue. The *Anders* brief contains no reference to or analysis of the adequacy of appellant's legal representation at trial.

Appellant filed a pro se response to the *Anders* brief, identifying various possible appellate issues, including whether the trial court properly accepted the guilty plea, and whether appellant received effective assistance of counsel. Neither of these potential issues are mentioned in the *Anders* brief, despite the voluminous record and the prominence of the mental-health issues throughout the procedural history of the case. In light of the *Anders* brief's complete failure to address these issues, we are also concerned about an allegation in appellant's pro se response that the appointed lawyer has never met with him to discuss the appeal or his medical conditions. Appellate defense counsel ordinarily should consult with the client about the appeal, and seek to meet with the client unless impractical.[8]

■■■ One of the functions of an *Anders* brief is to assist the appellate court in determining that appointed counsel "in fact conducted the required detailed review of the case."[9] The *Anders* brief must demonstrate that the appointed lawyer has "fully performed" his duty to support his client's appeal to the best of his ability.[10] Another function of the *Anders* brief is to inform the client, providing citations to the record to facilitate the filing of a pro se brief.[11] The *Anders* brief in this appeal does not serve these functions, and there-

---

**8.** *See* Tex. Code Crim. Proc. art. 1.051(a) ("The right to be represented by counsel includes the right to consult in private with counsel sufficiently in advance of a proceeding to allow adequate preparation for the proceeding."); *id.* art. 26.04(j)(1) (appointed attorneys shall "make every reasonable effort to contact the defendant not later than the end of the first working day after the date on which the attorney is appointed and to interview the defendant as soon as practicable after the attorney is appointed"); *see also* ABA Criminal Justice Standards for the Defense Function 4-9.3(a) (4th ed. 2015), http://www.americanbar.org/groups/criminal_justice/standards/DefenseFunctionFourthEdition.html ("Before filing an appellate brief, appellate defense counsel should consult with the client about the appeal, and seek to meet with the client unless impractical."). The ABA *Criminal Justice Standards for the Defense Function* "may be relevant in judicial evaluation of constitutional claims regarding the right to counsel," *id.* at 4–1.1(b), and they have had particular influence on courts evaluating the duty of counsel to investigate in the context of ineffective assistance of counsel claims. *See* Ellen S. Podgor, *The Role of the*

*Prosecution and Defense Function Standards: Stagnant or Progressive?*, 62 Hastings L.J. 1159, 1171 & n.74 (2011) (collecting cases). The ABA *Standards* are "not binding" on the courts as definitive statements of professional standards applicable to criminal defense counsel. *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex.Crim.App.2013); *see also Bobby v. Van Hook*, 558 U.S. 4, 14, 130 S.Ct. 13, 20, 175 L.Ed.2d 255 (2009) (Alito, J., concurring). That said, "as guides to determine prevailing professional norms," the United States Supreme Court and the Texas Court of Criminal Appeals both have referenced them in the context of ineffective assistance of counsel claims. *See LaHood*, 401 S.W.3d at 50; *see also Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 1514–15, 146 L.Ed.2d 389 (2000); *Ex parte Briggs*, 187 S.W.3d 458, 467 & n. 22 (Tex.Crim.App.2005).

**9.** *Penson v. Ohio*, 488 U.S. 75, 81, 109 S.Ct. 346, 350, 102 L.Ed.2d 300 (1988).

**10.** *McCoy*, 486 U.S. at 439, 108 S.Ct. at 1902.

**11.** *Banks*, 341 S.W.3d at 430.

fore does not demonstrate the "conscientious examination" required as a predicate to a motion to withdraw from representation on the grounds of the frivolity of the issues.[12] In this regard, the *Anders* brief should disclose information sufficient to satisfy the court of appeals that appointed counsel has adequately investigated the case to professionally evaluate whether there are any nonfrivolous appellate issues.

 The *Anders* procedure is designed to protect an indigent defendant's constitutional right to counsel on direct appeal.[13] Accordingly, even if the court's independent review of the cold record as it stands would not identify a nonfrivolous ground for appeal, in the absence of a proper *Anders* brief reflecting an appropriately "conscientious examination" we could not conclude that an attorney who did perform the necessary evaluation, which necessarily transcends the sterile style of review conducted by the court, likewise would find any appeal to be frivolous.[14]

■ Not all *Anders* briefing errors require appointment of new counsel. This court previously has held that counsel should be afforded the opportunity to re-brief to address the deficiencies in the brief in the event of "errors in form,"[15]

which include "technical violations of the *Anders* requirements" such as "the failure to discuss issues appearing prominently in the record."[16] We conclude that the deficiencies of the *Anders* brief in this case are form errors of this variety. Accordingly, we strike the *Anders* brief and order that appointed counsel file a new brief.

Justice Jennings, dissenting.

---

12. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400.

13. *Smith*, 528 U.S. at 273, 120 S.Ct. at 757 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987)).

14. *Cf. Douglas v. People of State of Cal.*, 372 U.S. 353, 356, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963) ("Any real chance" an indigent defendant "may have had of showing that his appeal has hidden merit is deprived him when the court decides on an ex parte examination of the record that the assistance of counsel is not required."). Such an approach would deprive appellant of "that equality demanded by the Fourteenth Amendment where

the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf," while the indigent "is forced to shift for himself." *Id.* at 358, 83 S.Ct. at 817. "The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." *Id.*

15. *Banks*, 341 S.W.3d at 431–32 (citing *Wilson v. State*, 40 S.W.3d 192, 198–99 (Tex. App.–Texarkana 2001, no pet.)).

